By the Court, Mason, J.
This court has no jurisdiction to review the question here raised on this bill of exceptions. Bills of exceptions, by which questions of law made and decided on criminal trials may be brought up and reviewed in a higher court, were unknown to the common law; and although allowed by our statutes, yet the statute limits the right to exceptions taken on the trial of the main issue, and does not reach such questions as are raised by this plea on the preliminary question of jurisdiction. The words of the statute are: “ On the trial of any indictment, exceptions to any decisions of the court may be made by the defendant, in the same cases and manner as pro- . vided bylaw in civil cases.” (2 R. S., 736, § 21.) A trial of this plea to the jurisdiction, is not a trial of the indictment, but is preliminary thereto, and to ascertain and determine whether the court has jurisdiction' to • try the defendant upon the indictment. The case of Freeman v. The People (4 Denio R., 10) decides this question.
But assuming that the argument of the people’s demurrer to the defendant’s plea to the jurisdiction of the court to try this prisoner for the offense charged in the indictment, is the trial of the indictment (which is much easier assumed than maintained), then the question arises: Has the court of Oyer and Terminer jurisdiction to try this defendant for this alleged murder ? • Murder is .one of the *142 highest crimes known to the common law, and the court of Oyer and Terminer of this State had general jurisdiction of the offense long before the adoption of the Constitution of the United States; and their jurisdiction to try such offenses has never hitherto been questioned where the offense was committed within the jurisdiction of the State and against the laws of the State. This murder is alleged- to have been committed in the county of Chemung, in which the prisoner is charged to have murdered a citizen of the State, and the indictment is preferred against him by the grand jury of the county of Chemung, charging him with this offense, against the laws of the State.
The defendant’s plea to the jurisdiction of the court is predicated on the twentieth section of the act of Congress of March 3d, 1863 (U. S. Statutes at Large, p. 737, vol. 12), which declares “ that in time' of war, insurrection or rebellion, murder, assault and battery with intent to kill, manslaughter, mayhem, wounding by shooting with intent to commit murder, robbery, arson, burglary, rape, assault and battery with intent to commit rape, and larceny, shall be punishable by the sentence of a general court martial or military commission, when committed by persons who are in the military service of the United States, and subject to the articles of war; and the punishment for such offence shall never be less than those inflicted by the laws of the State, or territory, or district, in which they may have been committed.” The plea sets up that the defendant was a soldier in the military service during war, insurrection and rebellion, and subject to the articles of war at the time the said offense is alleged to have been committed; and that he is only amenable to military commission or general court martial, which have sole and exclusive jurisdiction of the offense.
The first question to. be considered is, whether this act of Congress is a constitutional and valid act. The thirteenth subdivision of- section eighth of the Constitution *143 declares that Congress shall have power “ to malee-rules for the government and regulation of the land and naval forces;" and the fifth article of the amendment of the Constitution declares that no person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury, “ except in cases ansing in the land and naval forces, or in the militia, when in actual service in time of war or public danger." There can be no doubt, I think, that in time of war or public dang&r Congress has the power to provide for the government of the land and naval forces of the United States, and to declare what shall be military offenses, when committed by those in the military service of the-government, and to provide for tlieir punishment by military commission or general court martial. This power seems to be clearly contained in sub-section thirteen of section eight, and in the fifth article of the amendments referred to; and the executive branch of the government have certainly decided in the case of Reuben Staal, convicted by military court martial in the State of Ohio, that this act of Congress is valid. On the advice of Judge Advocate Holt, I fully concur in the result of this opinion of Judge Holt, holding this act constitutional.
The next and more important question is, whether this act of Congress, conferring this jurisdiction upon the military courts martial, is exclusive, and divests the State courts of jurisdiction in similar cases. This depends upon the question whether this act of Congress supersedes and nullifies the State statutes and the common law, so far. as it applies to the crime of murder committed by soldiers in the military service of the United States. If it be conceded that Congress has exclusive jurisdiction or control over this subject, it does not follow that the jurisdiction of the State courts are excluded, unless by the act in question they have assumed to exclude the jurisdiction of the State courts by the clear language of the act itself. ■ There *144 is no reference to the State courts in the act, and nothing said in reference to them. The act simply says such offenses shall be punishable by general court martial or military commission, which means nothing more than they may be punishable by general court martial or military commission.
All that is meant by the act is to confer jurisdiction upon those military courts to try such offenses, and to declare them military offenses. It merely creates ttose cases enumerated in the act into military offenses, and provides for their punishment by military courts. It was never intended to abolish the crime of murder at common law, or as defined by State statutes. On the contrary, the act itself seems to contemplate the existence and continuance of the State laws, for the act of Congress itself provides that the punishment to be imposed by such military courts for such offenses shall not be less than those inflicted by the laws of the State, territory or district in which they have been committed; and as the act of Congress does not define the punishment, but refers to the State laws for the prescribed punishment, I think it is very clear that it was never intended by this act to supersede or nullify the State laws; and this should not be inferred or intended except upon the most clear and explicit language. It was held by the court of dernier resort in this State, in the case of The People v. Enoch (13 Wend. R., 159), that our statutes defining murder and homicide did not supersede or abolish the common law crime of murder, and that notwithstanding the change created by those statutes, an indictment at common law for murder would lie. The act of Congress not having superseded our State laws upon the subject of murder, this indictment is well found by alleging this murder to be against the peace “ of the people of the State of New York, their laws and dignity; ” and there can be no doubt, I think, as to the jurisdiction of the court of Oyer and Terminer to try the prisoner for this
*145 offense. It is only necessary to advert to some few principles which have been adjudged by the courts of this State, and sanctioned by the Federal courts themselves, to settle this matter. It' was held by the Court of Errors of this State, in Delafield, v. The ¡State of Illinois (2 Hill R., 160), that the Constitution of the United States has not, by its own force, divested the State courts of any of their former jurisdiction, and that a mere grant of jurisdiction to a particular court Without words of exclusion as to other courts previously possessing the like powers, will only have the effect of constituting the former a court of concurrent jurisdiction with the latter also. (26 Wend. R., 192.) The same principle is affirmed by the Court of Appeals of this State in the case of Teal v. Felton (1 Comst. R., 539), where the case of Delafield v. The State of Illinois is .commented upon and affirmed; and the case of Teal v. Felton was affirmed by the Supreme Court of the United States in 12 How. R., 284, and for the reasons assigned by Judge Wright in our State court. Chancellor Kent, in his Commentaries, in discussing this matter, says that, without an express provision to the contrary, the State courts will retain a concurrent jurisdiction in all cases where they had jurisdiction originally over the subject matter. (1 Kent's Com. 400, marg. page; p. 444, 9th ed.) There are many crimes made punishable by the laws of the United States which are also made punishable by the laws of the State. In such cases it has been held that the State courts have jurisdiction of the crime. (8 Metcalf R., 313; 9 Ohio R., 133; 2 Comst. R. S. C., 77; Curt. Com. on the Const., § 133.) And there is another class of cases, embracing crimes punishable at common law, in which the State, courts had jurisdiction before the adoption of the Federal Constitution, although such crimes are brought under the cognizance of the Federal courts by the Constitution of the United States and the legislation of Congress. The jurisdiction of the State courts still con *146 tinues, unless such jurisdiction is made exclusive in the Federal courts by the, Constitution or by the acts of Congress. (3 Park. Cr. R., 372, 373; 8 Metcalf R., 313; 12 How. U. S. R., 284; Curt. Com. on Const., § 121; 7 Conn. R., 244, 248; 1 Wheat. R., 337; 1 Kent’s Com., 402; marg. p. 402; p. 447, 9th ed.)
The counsel for the prisoner relies upon the eleventh section of the judiciary act of the United States, passed September 24,1789, which provides that the circuit courts of the United States shall have exclusive jurisdiction of all crimes arid offenses cognizable under the authority of the United States, except where this act otherwise provides, or the laws of the United States shall otherwise direct.'
Chancellor Kent, in considering this eleventh section of the judiciary act, says, the judiciary act in no instance excluded the previously existing jurisdiction of the State courts,- except in a few specified cases of a national nature; and he adds, but their jurisdiction was excluded in all criminal cases with respect to offenses arising under the • acts of Congress. In such cases, the Federal jurisdiction was necessarily exclusive; but he adds, it was not so as to pre-existing matters within the jurisdiction' of the State courts. (1 Kent’s Com., 402, marg. p.; page 447, 9th ed. See also, 7 Conn. R. 248; 1 Wheat. R., 337; 5 U. S. Cond. R., 562.)' It is proper to remark in this connection that the prisoner is indicted under the State statutes or laws, and for an offense committed against the State, and therefore the judiciary act has nothing to do with the question. It seems to follow that the jurisdiction of the State courts is not affected by this act of Congress, and that this alleged crime of murder against the prisoner may be tried in the court of Oyer and Terminer; and I am really not able to see how the question of the jurisdiction of the State courts can be seriously doubted. The crime is alleged to have been committed against the State, and not against the United States; and when the prisoner is indicted in the *147 State court, the military officers having jurisdiction in the premises voluntarily surrendered the prisoner to the State authorities for punishment, according to the, directions of the articles of war; and I think his plea to the jurisdiction of the State court was properly' overruled. But as there was no judgment given against the prisoner, and no record brought up which we can review, I advise that the writ of certiorari be superseded and the case remitted to the Oyer and Terminer, and the prisoner be required to plead to the indictment.
Certiorari superseded and case remanded.